## DIEGO v. ROVIRA et al.

(Circuit Court of Appeals, First Circuit.   December 6, 1918.)

### No. 1275.

1. EVIDENCE ⬉341—DOCUMENTS—WATER RIGHTS—MAYOR'S REPORT.
    A copy of a report by the mayor of a town in Porto Rico, made in 1867, in response to a circular sent out by the department of public works, of a concession of the water of a stream to a person named, but which stated that the date and nature of the concession were unknown, *held* not admissible as evidence of a concession.

2. WATERS AND WATER COURSES ⬉152(8) — WATER RIGHTS IN PUBLIC STREAM—PRESCRIPTION.
    The right of defendants *held* established by prescription under Rev. St. Porto Rico, 1913, § 3486, to use the waters of a public stream to the extent impounded by a dam maintained since 1868, with the right to maintain the dam in repair and at the same height.

Appeal from the District Court of the United States for the District of Porto Rico; Hamilton, Judge.

Suit in equity by Pedro de Diego y Gonzalez against Jose Rovira and another.   From the decree, complainant appeals.   Modified and affirmed.

Francis E. Neagle, of New York City, for appellant.

Joseph B. Jacobs, of Boston, Mass. (Hugh R. Francis, of San Juan, Porto Rico, and Jacobs & Jacobs, of Boston, Mass., on the brief), for appellees.

Before BINGHAM and JOHNSON, Circuit Judges, and BROWN, District Judge.

JOHNSON, Circuit Judge.   This is an appeal from a decree of the District Court of Porto Rico enjoining the appellees, Jose and Joaquin Rovira, doing business under the firm name and style of Rovira Hermanos, as lessees, and the succession of Juan Ignacio Capo, as owners, of certain real estate, from maintaining a dam at its present height across a small stream called the Quebrada Caimital.   That part of the stream with which the case is concerned lies in the municipality of Guayama in the island of Porto Rico.   The land of the Capo estate lies a short distance above the land of the appellant, and both border upon the Quebrada Caimital, also known in this part of it as Quebrada Arriba.

The testimony was undisputed that from about 1850 down to the date of the bill a dam of some sort had been maintained on the site of the present dam, with a canal leading from the dam to the land of the Capo estate, which had been used for purposes of irrigation.   The stream is a very small one, and very little water flows in it, particularly during the seasons of drought, which are common on the south side of the island, where it is located.   The dam was constructed of brick, about 30 feet long, extending across the whole width of the stream and but little more than a foot high.   The canal that leads

from the dam is only about one foot wide and one foot high. The appellant, as owner of the lower estate upon the stream, makes use of his property for a dairy and for pasturing cattle. In the great hurricane of 1868 the dam and canal were partially destroyed; but from the evidence it appears that the greater damage at this time was done to the canal.

The appellees claim the right to use all the waters of the stream for purposes of irrigation by virtue of a concession to one Don Juan Donzac before the year 1853, and also by prescription. The appellees, Rovira, received a sublease of the property August 11, 1914, and soon after they entered into occupation of the land, made some repairs upon the dam, and some time in February, 1916, added to its height several inches, by placing a construction of concrete on top of the brick work, and also repaired the leaks in the dam, so that the dam thereafter entirely stopped the flow of water to the land of the appellant during the dry season, when it was all used for irrigation on the Capo estate. The appellant claimed that he had enjoyed the right from time immemorial to water his cattle in the stream below the dam adjacent to his property, and to use the waters there for dairy purposes. The parties agree that the waters of the Quebrada Caimital are public waters.

By the Civil Code of Porto Rico, § 416 (section 3486 of the Revised Statutes of Porto Rico), it is provided that the use of public waters may be acquired in two ways:

(1) By administrative concession.

(2) By prescription after 20 years.

"The limits of the rights and obligations of these uses shall be those shown in the first case by the terms of the concession, and in the second case by the manner in which the waters have been used."

It is also further provided by section 432 of the Civil Code (section 3502 of the Statutes of Porto Rico) as follows:

"Anything not expressly determined by the provisions of this chapter shall be governed by the special law of waters."

The Law of Waters was a Spanish statute, which was extended over Porto Rico by royal order, February 5, 1886, and in the compilation of the Revised Statutes of Porto Rico appears as sections 2387 to 2645, both inclusive. It is clear that the rights of the parties are governed by the Civil Code, if expressly determined by its provisions, and, if not, by the special law of waters.

[1] To prove a concession of all the waters of the Quebrada Caimital, the appellees introduced in evidence a copy of a record of the report of the mayor of Guayama, made in accordance with royal orders issued on July 11, 1867, and February 29, 1868, relative to water concessions. This record was produced by the keeper and librarian in the department of the interior of the government of Porto Rico.

Because of the royal order of July 11, 1867, providing for a statute of irrigation in the island of Porto Rico, a circular was sent out by the department of public works to the mayors of the different towns on the island, asking for a report on the water concessions that had been

granted in their municipalities, for the purpose of organizing a hydrological service.

In response to this circular the mayor of Guayama made a report, part of which applies to the waters of the stream in question. The copy of the record of the report offered is as follows:

"Department of Guayama. Statement of Water Concessions Existing in this department: Districts—Guayama.

"Source of the waters—stream of Quebrada Arriba. Purpose of the waters—irrigation of canes and water supply to the steam engine. Nature of the concession—unknown. Date of the concession—unknown. Name of the first grantee—Don Juan Donzat. Volume of water granted—the whole creek. Extension of land irrigable under the concession—more than 100 hectares. Remarks—from this irrigation the plantations of Don Jose Sabater and the Curet sisters participate on certain days."

To the introduction of this evidence the appellant objected, and the receipt of it in evidence is assigned as error. It is not in dispute that Don Juan Donzac (also written Donzat) was the original owner of the property where the dam in question is located, and that title has passed from him by several mesne conveyances and leases to the appellees, and in the deed of the property given by the beneficiaries under the will of Don Juan Donzac, September 27, 1853, the water rights are conveyed in the following terms:

"One irrigation canal, the irrigation rights and concession from the creek called Arriba or Caimital."

We think the copy of the record of the report of the mayor of Guayama to the board of public works was not competent to prove a concession to Don Juan Donzac. It does not purport to be a record of any concession, but only of the information which was gained by the mayor of Guayama in regard to concessions from the Quebrada Arriba. Nor does it purport to be based upon an examination of records or upon documentary evidence, since it expressly states that the nature and date of this alleged concession are unknown, although it does state that the volume of water granted by it is the whole creek. It would seem to be nothing more than an expression of opinion by the mayor of Guayama, and was not competent to prove that a concession had been granted.

[2] The appellees also claim, however, to have acquired by prescription a right to use all the waters of the creek, by virtue of section 416 of the Civil Code, which provides that a right to the use of water may be acquired by an uninterrupted use for 20 years, and that the limits of the rights and obligations of these uses shall be shown "by the manner in which the waters have been used," and also by article 149 of the Law of Waters, which is as follows:

"Art. 149. He who shall have enjoyed the use of public waters for a period of twenty years without opposition on the part of the authorities or a third person shall continue to enjoy it, even though he cannot prove that he obtained the proper authority."

Although the testimony is contradictory and confusing as to the extent of the use of the waters stored by the dam and its periods of interruption, there was evidence that since 1868 a dam has been main-

tained on its present site, and the waters stored by it used each year for the purpose of irrigating the land of the Capo estate.

A careful reading of the whole record convinces us that in times of drought the dam, as maintained from 1868 down to 1914, the date of the sublease to the appellees, Rovira, deflected all the waters of the stream into the canal, except what might have leaked through the dam or seeped through the soil in subterranean channels and reached the surface in pools opposite the land of the appellant, but that in time of excessive rainfalls and during a wet season the canal was not sufficiently large to carry all the waters of the stream, and that some flowed over the dam. There is no evidence in the case to show an uninterrupted use of any definite quantity nor for any definite time by the appellant.

Section 418 of the Civil Code provides:

"The right to make use of public waters is extinguished by the lapse of the concession and by nonusage during twenty years."

The appellant claims that the dam and canal were wholly destroyed by the great hurricane of 1868, and thereafter until 1914, when the dam was repaired by the appellees, Rovira, it afforded practically no obstruction to the flow of water to the appellant's property, and that no repairs were ever afterward made upon the dam until the sublease to the appellees, Rovira; but it nevertheless appears from his own witnesses that in quite recent years, before any repairs were made by the defendants, Rovira, the Capo estate obtained irrigation water from the Quebrada Caimital by means of the dam and canal.

Evidence was introduced by the appellees that from 1868 down to 1914 water was used whenever desired for irrigation upon the Capo estate, and that when it was not desired to use it for irrigation the canal was closed, and the water flowed over the dam, and that some water leaked through the dam.

The presiding judge below saw the witnesses and had an opportunity to judge their credibility. He also had the advantage of a view of the dam and the section of the stream near it and opposite the land of the appellant. He found that while there was at that time, which was a time of drought, very little water on the surface, there was evidently water beneath the surface available by pools, whether natural or artificial; but—

"after the Quebrada leaves the plaintiff's property it is practically a dry bed, although quite wide and stretching with well-defined banks past the Ceiba and other trees for hundreds of yards until it joins the larger Quebrada, called in evidence the 'Minondo.' "

While he did not pass upon the question whether the appellees had obtained the right to the use of the waters of the stream by prescription, yet he did find insufficient proof that the concession granted to Don Juan Donzac had been lost by nonusage for the period of 20 years.

We think the appellees and those under whom they claim did enjoy the use of the waters of the Quebrada Caimital for the period of 20 years; that this right by section 418 of the Civil Code of Porto Rico

could not be lost, except by nonusage during 20 years, which was not proven; and that the decree of the court below that the appellees are entitled to use for purposes of irrigation the waters of the stream which can be stored by a dam of the height of the one that existed there prior to August 11, 1914, was justified by the evidence.

We find it unnecessary to resort to the special law of waters to determine the rights of the parties, for they are governed by the Civil Code, and it is only when rights cannot be determined by it that they are to be governed by the special law of waters. The questions presented in this case, as we view them, are the acquisition by prescription the right to the use of the waters of a public stream, and whether these rights when acquired have been lost by nonuser, and upon both the provisions of the Civil Code furnish all the means necessary for their determination. It is true that the amount of water which was being used by the appellees and those in privity with them has not been determined, nor has that used by the appellant; but the height of the dam, as it has existed for more than 60 years, would determine the amount of the waters of the stream which the appellees could legally use, and provides the fairest test of the amount of water that has been used by the parties, in the absence of proof as to the extent of use by either.

We are of the opinion, therefore, that the learned judge in the court below arrived at a correct conclusion in holding that the appellees had the right to maintain a dam of the height which had existed there before August 11, 1914, and that all additions which have been made to its height should be removed by them at their own expense. While we do not place our decision upon the same ground as the District Judge placed his, that the appellees "are the lawful owners of a water concession, originally made to one Don Juan Donzat, and as such are entitled to the use of all the waters of the Quebrada Caimital," we do concur in that part of his decree in which he finds that they are entitled to the use of all the waters of the Quebrada Caimital which may be diverted by the dam described in the pleadings, "but only at the height of the said dam prior to the change of August, 1914." We find that the appellees had acquired this right by the use of the waters of the stream which were stored by the dam as it originally existed, for a period of more than 20 years, that they had not lost this right by nonusage, and that the appellant, neither by a temporary use, nor by participation in the common use of the waters of the stream, has acquired any right adverse to this right.

We think, under the authority of article 186 of the Law of Waters, the appellees had the right to repair their dam. It is true that the article provides that the governor of the province must be informed of these repairs; but the failure to give this information does not work any forfeiture.

The fact that the dam was in a leaky condition did not prevent the appellees from stopping the leaks in it by repairs, and no decision by the courts of Porto Rico was cited to show that the owner of a dam may not repair it and stop leaks in it, making a tight dam of the same height, in place of the leaky dam which may have existed before.

The appeal is dismissed. The decree of the District Court is modified, to conform to this opinion, by striking out from the second paragraph thereof the words "are the lawful owners of a water concession originally made to one Juan Donzac, and as such," and, as thus modified, is affirmed; the appellees to recover their costs in this court.